**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| Floyd Kuriloff, an Individual, | |
| Plaintiff, | Civil Action No.: 2:23cv270 |
| v. | **COMPLAINT** |
| InnerScope Hearing Technologies, Inc., a Nevada Corporation; Matthew Moore, an individual; Mark Moore, an individual; Kimberly Moore, an individual; and VStock Transfer, LLC, a California Limited Liability Company, | |
| Defendants. | |

Plaintiff Floyd Kuriloff ("Plaintiff" or "Kuriloff"), for his complaint against InnerScope Hearing Technologies ("INND"), Matthew Moore, Mark Moore, Kimberly Moore (collectively "the Moore's") (INND and the Moore's are collectively referred to as the "INND Defendants"), and VStock Transfer, LLC ("VStock"), states and alleges as follows:

## I.    INTRODUCTION

1.    This case arises out of the INND Defendants' unlawful "pump and dump" scheme whereby they fraudulently induced Mr. Kuriloff to sell his hearing aid business (the "Business") to INND through the artifice of a Stock Purchase Agreement dated November 23, 2021 (the "SPA") and related agreements, including but not limited to a consulting agreement (the "Consulting Agreement") an indemnification agreement ("Indemnification Agreement") and a "leak out" agreement (the "Leak Out Agreement") as to which the INND Defendants had neither intention nor ability to perform the terms therein. The INND Defendants made repeated and intentional fraudulent misrepresentations, concealed critical facts, and committed repeated subsequent breaches of contract, and engaged in knowing and intentional market manipulation all to Plaintiff's severe detriment. As a result of this willful and unlawful conduct, Mr. Kuriloff lost his once-

thriving business, virtually all of the benefits bargained for in the SPA, and the goodwill and reputation that he spent a lifetime building.

2.      The INND Defendants fraudulently induced Mr. Kuriloff to enter into the SPA and related agreements by falsely promising to provide capital post-acquisition of the Business, falsely promising to remove Mr. Kuriloff from any personal guarantees for outstanding debts relating to the Business, falsely promising they would indemnify Mr. Kuriloff against those debts in the event of default, and falsely representing that Plaintiff could begin liquidating shares of INND, which he received as consideration for the sale of the Business in lieu of cash payment, as early as six (6) months from the date of purchase on November 23, 2021, which INND Defendants knew full well was a legal impossibility.  It was a legal impossibility because INND  had, earlier in that very same year, purposely and deliberately ceased to become a company that was subject to the reporting requirements of the Securities and Exchange Commission (the "SEC") through the filing of a Form 15-12G on March 2, 2021, and was therefore subject to a holding period of one (1) year, at a minimum, rather than the promised six (6) months, which was only available to SEC reporting companies, which INND elected to cease to become.

3.      Shortly after the parties entered into the SPA, the INND Defendants breached nearly all of their contractual obligations, including their obligation to pay amounts owed to Mr. Kuriloff under the Consulting Agreement, failure to remove Mr. Kuriloff as the personal guarantor on the office space utilized by INND as the sole operating office for its employees residing in Virginia at 3502 Pacific Avenue, Virginia Beach, VA 23451 (the "INND Office") as well as failure to pay rent on the INND Office, causing Mr. Kuriloff to personally pay these INND obligations and liabilities. Further, the INND Defendants failed to issue Mr. Kuriloff's shares which he received as consideration for selling his business to them. INND Defendants have wrongfully and intentionally refused to issue Mr. Kuriloff's shares to him as a means to prevent the public markets from becoming aware of the large number of shares owed to Mr. Kuriloff in an attempt to prevent the market price of INND's penny stock from sinking due to the dilution that would result from the issuance of the shares legally owed to Mr. Kuriloff.  Through the intentional failure of the INND Defendants to issue the stock owed to Mr. Kuriloff in a timely manner, or most recently, failure

to issue the shares owed to Mr. Kuriloff at all, the INND Defendants engaged in a classic market manipulation scheme by failing to properly disclose to the investing public the correct capitalization of INND.

## II.    PARTIES

4.      Plaintiff Floyd Kuriloff is an individual and shareholder of Defendant InnerScope Hearing Technologies, Inc., and resides in Virginia Beach, Virginia.

5.      Defendant InnerScope Hearing Technologies, Inc. is incorporated under the laws of Nevada with its principal place of business in Placer County, California. InnerScope Hearing Technologies, Inc. is controlled by Defendants Matthew Moore, Mark Moore, and Kimberly Moore, and operates as an issuer of sub-penny priced securities traded on the over the counter ("OTC") Pink Open Market.[1]

6.      Defendant Matthew Moore is an individual and is the Founder and Chief Executive Officer of Defendant InnerScope Hearing Technologies, Inc., and resides in Placer County, California.

7.      Defendant Mark Moore is an individual and is the Chairman and Co-Founder of Defendant InnerScope Hearing Technologies, Inc., and resides in Placer County, California.

8.      Defendant Kimberly Moore is an individual and is the Chief Financial Officer of Defendant InnerScope Hearing Technologies, Inc., and resides in Placer County, California.

9.      Defendant VStock Transfer, LLC ("VStock") is a California limited liability company with its principal place of business in Nassau County, New York. VStock is an SEC-registered stock transfer firm serving both private and publicly traded security issuers, including Defendant InnerScope Hearing Technologies, Inc.

## III.    JURISDICTION, VENUE, AND CHOICE OF LAW

10.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and because the amount in controversy is no less than $10 million, which exceeds the $75,000 jurisdictional amount set forth in 28 U.S.C. § 1332(a).

11.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the case arises under the laws of the United States, including the federal antifraud

---

[1] The OTC "Pink Open Market" is the lowest possible tier of reporting on OTC Markets which does not require it to meet any minimum financial auditing or reporting requirements.

provisions of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

12.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from, and constitute part of, the same case or controversy that gave rise to Plaintiff Floyd Kuriloff's federal claims.

13.     This Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. § 2201 because this action presents an actual controversy within the Court's subject-matter jurisdiction.

14.     This Court has personal jurisdiction over Plaintiff and INND Defendants because INND Defendants committed tortious acts in Virginia directed at and intended to cause harm to Plaintiff in Virginia. Further, this Court has personal jurisdiction over Plaintiff and INND Defendants because under the SPA, the parties contractually agreed to a choice of forum provision specifying that venue would be exclusively in the Eastern District of Virginia for any lawsuit, action, or proceeding arising out of or based upon the SPA and thereby submitted to the jurisdiction of this court. SPA, Section 7.11. A true and correct copy of the SPA is attached hereto as **Exhibit "1."**

15.     This Court also has personal jurisdiction over VStock pursuant to Code of Virginia §8.01-328.1 which states that "(A): [a] court may exercise personal jurisdiction over a person, who acts directly or by an agent as to a cause of action arising from the person's: [c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Specifically, Mr. Kuriloff's claims as against VStock arise from VStock's tortious interference with a contract between Mr. Kuriloff, a Virginia domiciliary, and Quick Capital, LLC, who contracted to purchase shares of INND from Mr. Kuriloff. At INND's request, VStock blocked effectuation of the contract by refusing to transfer Mr. Kuriloff's shares to Quick Capital. As such, by unlawfully preventing Mr. Kuriloff from transferring his shares to Quick Capital and thus tortiously interfering with Mr. Kuriloff and Quick Capital's contractual agreement, VStock has established sufficient minimum contacts with Virginia such that they can be haled to a court in the Commonwealth of Virginia.

16.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because under the SPA, Mr. Kuriloff and the INND Defendants contractually agreed that any legal suit, action, or proceeding would be instituted in the courts of the Commonwealth of Virginia. SPA, Section 7.11.

## IV.     FACTS COMMON TO ALL COUNTS

17.     Mr. Kuriloff was the founder, former President, and majority shareholder of Hearing Assist II, Inc, a Virginia stock corporation ("Hearing Assist"). Hearing Assist developed novel technologies to make hearing aids more affordable and easier to obtain for people with hearing loss, especially those with low income and insufficient medical insurance coverage.

18.     On October 12, 2021, Mr. Kuriloff, other minority shareholders of Hearing Assist, and INND entered into a letter of intent for the purchase of 100% of the equity of Hearing Assist (the "LOI").  INND was to purchase Hearing Assist with INND shares issued to Mr. Kuriloff and the other owners of Hearing Assist. As set forth more fully below, the LOI established a $10 million dollar purchase price for Hearing Assist.  The first $5 million of stock to be issued was to be valued at the closing price per share on the day immediately prior to the executed LOI.  That price was $0.0089 per share.

  a. Unbeknownst to Mr. Kuriloff, and without INND Defendants disclosing this information, in December 2016, Matthew Moore, Mark Moore, and Kimberly Moore were charged with fraud, deception, misrepresentation, false advertising, and unlawful and unfair business practices that targeted senior citizens and people with hearing loss.

  b. On or around October 6, 2017, the California Department of Consumer Affairs issued a press release describing that a settlement was reached with the defendants in which they agreed to pay $600,000 in civil penalties and costs, agreed to an injunction preventing Matthew Moore, Mark Moore, and Kimberly Moore from engaged in selling hearing aids without a license. Mark Moore also agreed to surrender his hearing aid dispenser license. A true and correct copy of the press release is attached hereto as **Exhibit "2."**

19.     Mr. Kuriloff and INND entered into the SPA on November 23, 2021. Pursuant to the SPA, Mr. Kuriloff (the majority shareholder), along with other Hearing Assist shareholders sold their shares in Hearing Assist to INND. However, INND did not tender the full $10 million purchase price to the Sellers upfront. At the closing the Sellers were to be issued $5 million worth of INND Common Stock at a purchase price of $0.0089 per share ("LOI Shares"). The LOI Shares accurately reflected the market price of INND Common Stock on or around the date the SPA was executed.

20.     With respect to the remaining $5 million worth of INND Common Stock due to be issued under the SPA, the INND Defendants issued the additional $5 million worth of INND Common Stock due under the agreement at $0.17 per share (the "Overvalued Shares").  A price that was nearly fifteen times in excess of the price of INND's Common Stock at the date of closing and nearly 20 times in excess of the contractual price of $0.0089 per share.  So that the INND Defendants could report to the public markets that it had issued Common Stock at a price of $0.17 per share, placing a market capitalization of over $1 billion on INND, while in reality the true market value of INND was a small fraction of that. A true and correct copy of the press release issued by INND Defendants dated November 29, 2021, is attached hereto as **Exhibit "3."**

21.     As a result of such artificially high pricing of the Overvalued Shares, Mr. Kuriloff received a small fraction of the shares of INND Common Stock he would have been entitled to receive had the Overvalued Shares been priced at market value (approximately 12.5% of the number of shares he would have received had the stock been priced the closing price on the date the SPA was executed or 5.2% of the number of shares Mr. Kuriloff was eligible to receive based on the $0.0089 price the date of the LOI).

22.     Recognizing that the artificially high price at which the Overvalued Shares were issued to Mr. Kuriloff was not indicative of reality and merely an attempt to manipulate market value, and that as a result of such artificially high pricing the Moore Defendants included a provision in the SPA that for provided for four (4) periodic "true up" shares to be issued to Mr. Kuriloff at 6-month intervals.

23.     On November 29, 2021, INND issued a Press Release describing the Hearing Assist acquisition. In this press release, INND specifically neglected to mention the "true up" obligations of INND, which to date, has resulted in nearly two billion shares issued or due to be issued.  The first "true up" was due on May 23, 2022 (the 6th monthly anniversary of the execution of the SPA), the second "true up" was due on November 23, 2022, the third "true up" was due May 23, 2023, and the fourth "true up" will be due on November 23, 2023. At each "true up" date, Mr. Kuriloff and three other sellers of Hearing Assist were entitled to additional shares of INND Common Stock equal to $1.25 million in value, less the value of the second tranche of shares (at 17 cents per share) revalued at the prices on May 23, 2022, and November 23, 2022, respectively.  Effectively, and in plain English, at each "true up" date, Mr. Kuriloff and others were entitled to have a portion of the over-priced shares of INND Common Stock issued to them at $0.17 per share revalued at the then current market prices.  By way of example, the market price of INND Common Stock on March 23, 2022, was $0.0031 (three tenths of a penny). A far cry from 17 cents and $0.105 (a penny) on November 23, 2022 (the second "true up" date). And most recently $0.0019 (two tenths of a penny) on May 23, 2023 (the third "true up" date). Each tranche of "true up" shares was due within 5 five days of each respective "true up" interval.

24.     As recently as May 23, 2023, the INND Defendants flatly refused to issue Mr. Kuriloff's third "true up" of shares, despite delivering the true up shares to the other three owners of Hearing Assist, thus singling Floyd out from participating in the benefit of his agreement.

25.     INND Defendants delayed issuing the first and second "true up" share tranches until November 29, 2022, despite repeated requests from Mr. Kuriloff and others. In fact, it was not until after receiving correspondence from counsel on the matter demanding that "true up" shares were due to be issued.

26.      In an email exchange between Plaintiff and Defendant Matthew Moore from June 11, 2022, Defendant Matthew Moore acknowledged that the first "true up" was intentionally delayed to avoid reporting the shares which would consequently dilute the outstanding shares and lead to a drop in stock price. To reiterate the point, Defendant Moore admitted to intentionally delaying the issuance of the "true up" shares in an attempt to manipulate market prices through a deliberate

7

withholding of material information from the public market. A true and correct copy of this email is attached hereto as **EXHIBIT "4."**

27.     The amount of "true ups" to be issued to Mr. Kuriloff is set forth in the Leak Out Agreement between the parties, which was entered into on November 23, 2021, as an ancillary agreement to the SPA. A true and correct copy of this agreement is attached hereto as **EXHIBIT "5."** The purpose of the Leak Out Agreement was to allow Mr. Kuriloff to sell a portion of the INND shares to achieve a measure of liquidity six (6) months after entering into the SPA. Prior to the parties entering into the SPA, the terms of the leak out were discussed in an email from Defendant Matthew Moore on September 17, 2021, in which he asserted that 25% of the restricted shares could be converted into free trading shares and then liquidated into cash on the open market at the shareholders' preference. A true and correct copy of this email is attached hereto as **EXHIBIT "6."** The terms of the leak out were also included in INND Defendants' Letter of Intent dated October 12, 2021 (attached hereto as **EXHIBIT "7."**)

28.     However, INND is not subject to the reporting requirements of the Securities Exchange Act of 1934 or, more colloquially, INND is not a mandatory "SEC reporting company" ("SEC" being an abbreviation for the Securities and Exchange Commission). If a company issuing securities is a mandatory SEC reporting company, then under certain conditions, a holder, such as Mr. Kuriloff would be able to liquidate INND Common Stock after six (6) months of the closing date of the Hearing Assist acquisition agreement (six (6) months from November 23, 2021). Pursuant to Rule 144, promulgated under the Securities Act of 1933, if the issuer of securities (such as INND) is not a mandatory SEC reporting company and thus not subject to SEC reporting requirements, then securities must be held for a period of at least one (1) year, with the holding period beginning when the securities were purchased and fully paid for. Thus, because INND is not a mandatory SEC reporting company, the shares issued to Mr. Kuriloff are mandated to be held for at least one (1) year. In other words, by contrast to the language of the LOI, the SPA, and the repeated representations made in emails by Defendant Matthew Moore, Mr. Kuriloff could not liquidate his shares within six (6) months of purchasing them because INND is not an SEC reporting Company. Moreover, Mr. Kuriloff was unaware at the time of signing the SPA and Leak

Out Agreement that INND's reporting status precluded him from converting and selling his shares within six (6) months of receiving them and was deliberately mislead on that matter by Matthew Moore.

29.     The "true ups" that were issued on or about November 29, 2022, are the only "true ups" that have been received by Plaintiff despite the third "true up" being past due. In other words, INND Defendants are refusing to issue Mr. Kuriloff the third allocation of "true up" shares to which he is entitled.

30.     The SPA also included an obligation owed by INND to provide funding to Hearing Assist, whereby INND Defendants committed to provide funding in the amount of $4,200,000 over ten (10) months following closing of the acquisition. Specifically, INND Defendants agreed to fund $750,000 to Hearing Assist each month for the first four (4) months following closing, and $200,000 each month for six (6) months thereafter. A true and correct copy of the pertinent provision of the SPA is attached hereto as **EXHIBIT "8."**

31.     Prior to entering into the SPA, this obligation was discussed in an email dated September 17, 2021, in which Defendant Matthew Moore stated that, among other benefits that INND would confer upon Hearing Assist post-merger was INND Defendants' injection of $750,000 per month for four (4) months before injecting what he referred to as "phase 2 capital," (the $200,000 per month for six (6) months thereafter). Additionally, Defendant Matthew Moore stated that due to the quick nature of the business deal, INND's promise to provide funding would be conditioned upon a binding Letter of Intent with Hearing Assist, while allowing INND to back out for any reason. Further, Defendant Matthew Moore falsely represented that INND Defendants would inject the first $750,000 installment within five (5) days of signing the binding LOI.

32.     Additionally, both the LOI, a "Side Letter Agreement" (the "Side Letter Agreement"), which is incorporated into the SPA by reference, and a "Bridge Loan Agreement" (the "Bridge Loan Agreement"), contain an obligation that INND Defendants would provide a $1.2 million Bridge Loan in October 2021 upon signing of the LOI. However, this never materialized. A true and correct copy of the Side Letter Agreement is attached hereto as **EXHIBIT "9"** and a true and correct copy of the Bridge Loan Agreement is attached hereto as **EXHIBIT "10."** Despite the

executed LOI explicitly including INND Defendants' obligation to provide funding of the $5.4 million that was promised, INND Defendants only invested a total of about $700,000 to Hearing Assist, contrary to Defendant Matthew Moore's assurances in his email of September 17, 2021.

33.     Article 1 Paragraph 1.7 of the LOI, and Section 5.10 of the SPA also obligate INND to remove Mr. Kuriloff from personal guarantees he had made for the debts of Hearing Assist, and to indemnify him for any costs attributable to Hearing Assist's failure to repay those debts. This includes indemnification of any actions taken by creditors of Hearing Assist against Mr. Kuriloff. INND Defendants have not removed Mr. Kuriloff from any personal guarantees or executed any replacement guarantees. Even though Defendant Matthew Moore agreed to assign INND as Mr. Kuriloff's indemnitor pursuant to a separate Indemnification Agreement dated November 23, 2021, INND Defendants have not indemnified Plaintiff from creditors despite numerous demands by Plaintiff that INND honor its indemnification obligation. A true and correct copy of the Indemnification Agreement is attached hereto as **EXHIBIT "11."**  As a result of INND's failure to pay its debts and fulfill its obligations to Mr. Kuriloff, Mr. Kuriloff's (former) creditors are now taking legal action against him, to wit, the action styled as *Canon Financial Services, Inc. v. Hearing Assist II, LLC; Floyd Kuriloff; and Hearing Assist II, Inc*, New Jersey Superior Court case number L-1960-21. A true and correct copy of this complaint is attached hereto as **EXHIBIT "12"**.

34.     Due to INND Defendants' intentional fraud, the many intentional breaches of the several binding agreements between them and Mr. Kuriloff, INND Defendants' intentional acts of market manipulation, INND Defendants' failure to pay Mr. Kuriloff for consulting services rendered, and INND Defendants and VStock's unjustified refusal to transfer Mr. Kuriloff's shares, Mr. Kuriloff has no choice but to commence this action and seek assistance from this Court to salvage whatever he can from the INND shares and recover damages for all the losses caused by the acts of the Defendants.

////

////

////

## V.     CAUSES OF ACTION

### Count I: Breach of Contract

### (Against the INND Defendants)

35.     Plaintiff repeats and reiterates the prior allegations in the preceding paragraphs as if fully alleged below.

36.     To establish a cause of action for breach of contract pursuant to the laws of Delaware (which govern the SPA), a plaintiff must allege (1) the existence of a contract, (2) the breach of an obligation imposed by the contract and (3) damages that the plaintiff suffered as a result of the breach.

37.     Plaintiff and INND entered into the valid and enforceable SPA and Indemnification Agreements on November 23, 2021.

38.     Plaintiff has fully complied with all of the terms and conditions of the SPA and Indemnification Agreements and has performed all conditions and obligations thereunder, save for any conditions or obligations from which Plaintiff has been excused.

39.     Plaintiff is entitled to full performance under all agreements entered into by and between the Parties, to wit:

40.     INND Defendants were obligated to provide funding to Hearing Assist in the amount of $4,200,000 over ten (10) months following closing, but have failed and refused to perform this obligation, in violation of the SPA. INND Defendants have not been excused from performing this obligation in any way.

41.     INND Defendants were obligated to provide a $1.2 million Bridge Loan as of October 2021 upon signing of the LOI, but have failed and refused to perform this obligation, in violation of the Side Letter Agreement—incorporated into the SPA by reference—the Bridge Loan Agreement, and the LOI. INND Defendants have not been excused from performing this obligation in any way.

42.     INND Defendants were obligated to indemnify Plaintiff. Under the two separate and distinct indemnification agreements, INND Defendants are obligated to remove Plaintiff from personal guarantees he has made for the debts of Hearing Assist, and to indemnify Plaintiff for any

costs attributable to Hearing Assist's failure to repay those debts (outlined below). This includes indemnification of any actions taken by creditors of Hearing Assist against Plaintiff. INND Defendants have failed and refused to perform these obligations, in violation of the indemnification agreements. INND Defendants have not been excused from performing these obligations in any way. The indemnification obligations of the INND Defendants are:

      a.  Finance and Security Agreement by and between Hearing Assist II, LLC and Canon Financial Services, Inc., dated September 10, 2019 (Approximately $800,000.);

      b.  Agreement for the Purchase and Sale of Future Receipts by and between Hearing Assist II, LLC and TVT Direct Funding, LLC., dated April 6, 2021 (Approximately $400,000);

      c.  Guaranty by and between Diray Media, Inc. and Floyd Kuriloff, dated June 28, 2019;

      d.  Various corporate credit cards (Approximately $53,086.); and

      e.  Real Estate Lease in Virginia Beach, VA (Approximately $26,000 paid directly by Mr. Kuriloff on behalf of INND. There are eleven (11) more months remaining on the lease at a rate of $3,400 per month.).

43.    As a direct and proximate result of INND Defendants' numerous breaches, Plaintiff has sustained, and will continue to sustain, substantial damages in an amount to be determined at trial. Plaintiff has sustained tremendous economic loss, has been deprived of his right to possession of shares to which he is contractually entitled, and is facing legal action by creditors.

44.    Plaintiff therefore requests that this Court enter judgment awarding Plaintiff compensatory damages including expectation damages as a result of the breaches of contract described herein, in an amount to be determined at trial.

45.    Plaintiff further requests that this Court enter judgment awarding Plaintiff costs and attorney's fees, and grant Plaintiff such further and other relief as the Court may deem just and equitable.

////

////

## Count II: Declaratory Judgment

### (Against INND Defendants)

46.     Plaintiff repeats and reiterates the prior allegations in the preceding paragraphs as if fully alleged below.

47.     There is a genuine dispute with respect to whether Plaintiff is entitled to INND Defendants' performance under the above-cited agreements, including but not limited to:

    a.  Indemnification against the Finance and Security Agreement by and between Hearing Assist II, LLC and Canon Financial Services, Inc., dated September 10, 2019 (Approximately $800,000.);

    b.  Indemnification against the Agreement for the Purchase and Sale of Future Receipts by and between Hearing Assist II, LLC and TVT Direct Funding, LLC., dated April 6, 2021 (Approximately $1,786,744.);

    c.

    d.  Indemnification against the various corporate credit cards (Approximately $53,086.);

    e.  Indemnification against the Real Estate Lease in Virginia Beach, VA); and

    f.  The May 23, 2023, allocation of INND shares pursuant to the SPA which is 382,669,836 shares of INND Common Stock.

48.     Therefore, an actual and existing justiciable controversy exists between Plaintiff on the one hand, and INND Defendants on the other hand as to their respective rights and obligations under the above referenced agreements.

49.     Plaintiff seeks a judicial determination pursuant to Fed. R. Civ. P. 57 to resolve the present controversy.

50.     Specifically, Plaintiff is entitled to, and hereby requests, a judicial declaration that INND Defendants are obligated to perform each duty described in ¶44(a)-(g), above.

////

////

////

## Count III: Declaratory Judgment

### (Against VStock)

51.     Plaintiff repeats and reiterates the prior allegations in the preceding paragraphs as if fully alleged below.

52.     There is a genuine dispute with respect to whether Plaintiff is entitled to transfer 30,000,000 shares of INND stock performance under the above-cited agreements, including the Leak Out Agreement dated November 23, 2021.

53.     Therefore, an actual and existing justiciable controversy exists between Plaintiff on the one hand, and VStock on the other hand as to their respective rights and obligations under the above referenced agreements.

54.     Plaintiff seeks a judicial determination pursuant to Fed. R. Civ. P. 57 to resolve the present controversy.

55.     Specifically, Plaintiff is entitled to, and hereby requests, a judicial declaration that VStock is obligated to transfer the 30,000,000 shares of INND stock which were previously issued to him pursuant to the November 29, 2021, true up issuance.

56.     Issuing the requested declaration will terminate some or all of the existing controversies between Plaintiff and VStock.

## Count IV: Fraudulent Inducement and Fraudulent Concealment

### (Against INND Defendants)

57.     Plaintiff repeats and reiterates the prior allegations in the preceding paragraphs as if fully alleged below.

58.     In order to establish a cause of action for fraudulent inducement, a plaintiff must allege that (1) defendant falsely represented a material fact or omitted facts that the defendant had a duty to disclose, (2) defendant knew that the representation was false or made with a reckless indifference to the truth,  (3) the defendant intended to induce plaintiff to act or refrain from action, (4) plaintiff acted in justifiable reliance on the representation, and (5) plaintiff was injured by its reliance on defendant's representation.

59.     INND Defendants falsely represented material facts and/or omitted facts that it had a duty to disclose. INND Defendants had a duty to be truthful and accurate when they described to Plaintiff any information material to the transaction or matters related to the SPA, including but not limited to the related transaction agreements, INND's financial standing, the management of the company and its compliance obligations and corporate governance.

60.     First, INND Defendants misrepresented a material fact with respect to their obligation to provide funding to Hearing Assist. Both the LOI and the SPA contain an obligation that Defendant INND would provide "Project Funding " in the amount of $4.2M over the ten (10) months following the closing date. Specifically, INND agreed to fund $750,000 to Hearing Assist each month for the first four (4) months following the closing, and $200,000 each month for six (6) months thereafter. Prior to entering into the SPA, this obligation was discussed in an email dated September 17, 2021, in which Defendant Matthew Moore stated that among the opportunities that INND can confer upon Hearing Assist post-merger was INND Defendants' ability to inject $750,000 per month for four (4) months before injecting what he referred to as "phase 2 capital," (the $200,000 per month for six (6) months thereafter). Additionally, Defendant Matthew Moore stated that due to the quick nature of the business deal, INND's promise to provide funding would be conditioned upon a binding LOI for Hearing Assist, while allowing INND to back out for any reason. Further, Defendant Matthew Moore ensured that INND Defendants would be able to inject the first $750,000 installment within five (5) days of signing the binding LOI.

61.     Additionally, both the LOI, the Side Letter Agreement, which is incorporated into the SPA by reference, and the Bridge Loan Agreement contain an obligation that INND Defendants would provide a $1.2 million Bridge Loan in October 2021 upon signing of the LOI. However, this never materialized. Despite the LOI (dated October 12, 2021) being signed and explicitly including INND Defendants' obligation to provide funding of the $5.4M that was promised, INND Defendants only invested a total of approximately $700,000 to Hearing Assist, contrary to Defendant Matthew Moore's assurances in his email from September 17, 2021.

62.     Defendant Matthew Moore and Defendant INND falsely represented a material fact because Defendant INND did not have cash available to uphold an obligation to provide funding

in the amount of $5.4M. In fact, as of September 30, 2021, a mere 13 days after Defendant Matthew Moore assured Defendant INND's ability to provide funding, Defendant INND had zero cash on its balance sheets while maintaining only approximately $455,236 in receivables. Further, because INND is a non-SEC reporting "sub penny company," the sole fundraising tool at its disposal is a "Regulation A Offering." As such, INND had no ability to generate the requisite capital necessary to fulfill its obligation, nor was it in possession of such capital when Defendant Matthew Moore made the commitment to provide funding.

63.     INND Defendants knew that their representations to Plaintiff were false and/or were made with a reckless indifference to the truth. Given that INND had so little cash on its balance sheet, INND Defendants' representation that they could and would commit to funding $4.2M was false, they knew it was false, or at the very least, had a reckless indifference to the truth. Given the December 31, 2021, financial report as well as the June 30, 2022, quarterly financial report which showed cash in the approximate amount of $110,577, it was clearly impossible for INND Defendants to uphold their financial obligation to provide funding. As Chief Executive Officer of INND, Defendant Matthew Moore knew the financial health of his company, and thus was aware that he was making intentional misrepresentations.

64.     Next, INND Defendants intentionally concealed and failed to disclose that in December 2016, Matthew Moore, Mark Moore, and Kimberly Moore were charged with fraud, deception, misrepresentation, false advertising, and unlawful and unfair business practices that targeted senior citizens and people with hearing issues.

65.     On or around October 6, 2017, the California Department of Consumer Affairs issued a press release describing that a settlement was reached with the defendants in which they agreed to pay $600,000 in civil penalties and costs, agreed to an injunction preventing Matthew Moore, Mark Moore, and Kimberly Moore from engaged in selling hearing aids without a license. Mark Moore also agreed to surrender his hearing aid dispenser license. A true and correct copy of the press release is attached hereto as **Exhibit "2."** Their failure to disclose this material information to Plaintiff was intended to induce Plaintiff to enter into the SPA. Plaintiff was not aware of the Moore's history of fraudulent conduct, and acted in justifiable reliance on the Moore's non-

disclosure/concealment. Plaintiff has been injured by INND Defendants' non-disclosure/
concealment by being wholly deprived of the benefits to which Plaintiff is entitled under the SPA
and related agreements.

66.     INND Defendants misrepresented a material fact with respect to their agreement to remove
Plaintiff's personal guarantees. Article 1 Paragraph 1.7 of the LOI, and Section 5.10 of the SPA
also include an obligation by INND to remove Plaintiff from personal guarantees he has made to
the debts of Hearing Assist, and to indemnify Plaintiff for any costs attributable to Hearing Assist's
failure to repay those debts. This includes indemnification of any actions taken by creditors of
Hearing Assist against Plaintiff. INND Defendants have not removed Plaintiff from personal
guarantees as he is still being asked to sign documents and assume risk on behalf of Hearing Assist
since INND Defendants have kept him as the sole director of Hearing Assist. Even though
Defendant Matthew Moore agreed to assign INND as Plaintiff's indemnitor pursuant to the
Indemnification Agreement, INND Defendants have not indemnified Plaintiff from creditors,
some of which are taking action against Plaintiff as a result of the failure to repay debts owed to
them.

67.     Defendant Matthew Moore's representation that INND Defendants would remove
Plaintiff's personal guarantees was false, and the INND Defendants knew it was false at the time
the representation was made. Given the aforementioned financial state of INND, INND
Defendants did not have the capital available to uphold their own obligation to provide funding,
let alone indemnify Plaintiff for his financial obligations. Again, as Chief Executive Officer of
INND, Defendant Matthew Moore knew the financial health of his company, and thus was aware
that he was making empty financial commitments, therefore having no intention of indemnifying
Plaintiff or removing him from the personal guarantee.

68.     INND Defendants also misrepresented a material fact with respect to the Leak Out
Agreement included in the SPA. The Leak Out Agreement was intended to provide for Plaintiff to
achieve liquidity six months after entering into the SPA on November 23, 2021. In fact, the Leak
Out Agreement explicitly states that after the end of the initial leak-out period (November 23,
2021), Plaintiff would be entitled to convert and sell up to 25% of the total amount of INND shares

that Plaintiff receives within each six (6) month period following the initial leak-out period). Prior to the parties entering into the SPA, the terms of the leak out were discussed via email correspondence and included in INND's LOI. Specifically, in an email dated September 17, 2021, Defendant Matthew Moore assured Plaintiff that within each of the six (6) month periods following the initial leak-out period on November 23, 2021, that up to 25% of the total shares could be converted into free trading shares and then liquidated into cash upon his preference.

69.     However, Defendant Matthew Moore's promise that Plaintiff could liquidate within six (6) months of the initial leak-out period was a legal impossibility as INND is not SEC reporting. Pursuant to Rule 144, if the issuer of securities is not SEC reporting and thus not subject to SEC reporting requirements, then securities must be held for a period of at least one (1) year, with the holding period beginning when the securities were purchased and fully paid for. As such, even if Plaintiff was given possession of the first tranche of shares (including the first two "true ups" on time (May 23, 2022, and November 23, 2022, respectively) rather than receiving possession on November 29, 2022, Plaintiff would not have been able to liquidate any of them until November 23, 2022, when the requisite holding period had ended. Thus, because Defendant Matthew Moore and INND represented that Plaintiff could liquidate shares as soon as six months following the initial leak-out period, they misrepresented a material fact as their representation was a legal impossibility.

70.     Defendant Matthew Moore knew that this representation was false because he is aware that INND is not an SEC reporting company, especially since Defendant Matthew Moore has operated public companies for a long period of time. As such, the failure to disclose to Plaintiff that his shares were subject to a one-year holding period also constitutes deliberate concealment. Further, in an email dated July 12, 2022, Defendant Matthew Moore asserts that INND is not SEC reporting, and thus the holding period is one year. In the same email, Defendant Matthew Moore states INND's hope to be SEC reporting by the middle to end of September 2022. INND continues not to be an SEC reporting company. A true and correct copy of this email is attached hereto as **Exhibit "13."**

a. Instead, INND Defendants have been busy furthering their market manipulation scheme in an attempt to drive the stock price up. In addition to the various defaults on their obligations, INND Defendants have also failed to timely honor share issuance obligations pursuant to the SPA with respect to the shares associated with the third "true up."

71.     The reason for the failure of INND Defendants to issue shares which Plaintiff is contractually entitled to receive is due to their concern about shareholder reaction from stock dilution that would result from issuing additional shares. This is evinced in emails by Defendant Matthew Moore, particularly his email dated June 11, 2022, in which he acknowledges to Plaintiff that the delay in issuing the first "true up" was because he did not want to report those shares and therefore dilute stockholders and potentially decrease the stock value. Not only is this concealment, but intentionally hiding and failing to disclose a massive number of shares to be issued constitutes market manipulation.

72.     INND Defendants, by means of their empty promises to provide funding, to remove Plaintiff from the personal guaranty, to indemnify Plaintiff, and to provide liquidity to Plaintiff within six months of the closing date were all made to fraudulently induce Plaintiff to sell Hearing Assist so that outside investors would invest in INND as a result of their acquisition of a successful company.

73.     Due to the lack of capital necessary to provide funding and to indemnify Plaintiff, and due to the representations that Plaintiff could liquidate shares within six (6) months of closing–a legal impossibility–it is clear that INND Defendants never intended to uphold any of these contractual obligations, but rather made these representations to induce Plaintiff to sell his company.

74.     INND Defendants' false representations successfully induced Plaintiff to enter into the SPA. But for these fraudulent representations, Plaintiff would not have entered into the SPA at all. This is evinced by the August 18, 2022, Demand Letter (p.2, ¶5) that Plaintiff sent to INND Defendants in which Plaintiff stated that had he known that it would essentially be impossible for him to sell the stock as intended, he would not have entered into the SPA in the first place. A true and correct copy of this letter is attached hereto as **Exhibit "14."**

75.     Plaintiff acted in justifiable reliance on the multitude of false representations that INND Defendants made–particularly those made by Defendant Matthew Moore. Defendant Matthew Moore has been operating public companies for a long period of time. Not only does this put defendant Matthew Moore in a superior bargaining position than Plaintiff, but it justifies Plaintiff's reliance on his representation, as a reasonable person in Plaintiff's position would trust someone in Defendant Matthew Moore's position and believe that Defendant Matthew Moore intended to act in the best interest of INND's shareholders.

76.     As a direct and proximate result of Defendant Matthew Moore taking advantage of his bargaining position, breaching his fiduciary duties, and making fraudulent representations upon which Plaintiff relied to his detriment, Plaintiff suffered damages. Specifically, Plaintiff is facing action by creditors, he is being deprived of his right to possession of shares to which he is contractually entitled to, and he has suffered a substantial economic loss from being unable to liquidate his shares.

77.     Plaintiff therefore requests that this Court enter judgment for compensatory damages including expectation damages as a result of the fraudulent conduct described herein, in an amount to be determined at trial.

78.     In engaging in the above-described conduct, Defendant Matthew Moore and the INND Defendants acted grossly, with malice, oppression, and reckless disregard of Plaintiff's rights. Plaintiff therefore also requests that this Court enter judgment for punitive damages in connection with the fraudulent conduct. Plaintiff further requests that this Court enter judgment awarding Plaintiff costs and attorney's fees, and grant Plaintiff such further other relief as the Court may deem just and equitable.

### Count V: Tortious Interference with Contract

### (Against INND Defendants and VStock)

79.     Plaintiff incorporates all preceding paragraphs by reference.

80.     In order to establish a cause of action for tortious interference with a contract pursuant to the laws of Delaware, a plaintiff must allege (1) the existence of a contract, (2) that the defendant

knew about, (3) an intentional act by defendant that is a significant factor in causing the breach of that contract, (4) without justification, (5) which causes injury.

81.    Plaintiff entered into an agreement on or about May 3, 2023, to sell 30,000,000 shares of INND to Quick Capital. Upon Plaintiff seeking to transfer the shares which he is entitled to sell, VStock—without pursuing any investigation into the matter—rejected the transfer because INND Defendants asserted that it was in violation of INND's Leak Out Agreement with Plaintiff. A true and correct copy of the agreement between Plaintiff and Quick Capital, as well as VStock's rejection notice, are attached hereto as **Exhibit "15"** and **"16,"** respectively.

82.    Following this, a demand letter was sent by Plaintiff's personal counsel, Tomer Tal, Esq., to VStock on May 5, 2023, seeking the immediate transfer of shares. The Leak Out Agreement was attached to the demand letter, thus VStock was aware of the existence of the Leak Out Agreement and could easily observe that no violation had taken place. Stated differently, VStock was aware of the existence of a contract and its obligations with respect to the contract between Plaintiff and Quick Capital, and the contract between Plaintiff and INND. Additionally, INND Defendants were aware of the existence of a contract between Plaintiff and Quick Capital given that INND was on notice of the sale of 30,000,000 shares which they intentionally precluded by interfering with the transfer.

83.    Even after receiving a copy of the Leak Out Agreement—which proves that Plaintiff was not in breach—VStock still has not transferred the shares from Plaintiff to Quick Capital. By failing to transfer the shares VStock has intentionally prevented Plaintiff from performing his obligation under his contract with Quick Capital, and receiving value for his shares. Thus, VStock's acts—guided by INND Defendants—played a significant role in directly violating the terms of the agreement between Plaintiff and Quick Capital.

84.    INND Defendants' intentional prevention and VStock's intentional refusal to transfer the shares is without justification, especially since the Leak Out Agreement was provided to VStock on May 5, 2023, and proved that INND Defendants' allegation was baseless. The agreement not only showed that Plaintiff was not in violation of any of its terms but also showed that Plaintiff

had the right to liquidate shares after the SEC-required holding period of one year had passed, which it did on November 23, 2022.

85.     As a direct and proximate result of INND Defendants' prevention and VStock's refusal to transfer Plaintiff's shares, Plaintiff has been damaged. Plaintiff has had to hold onto a large stock position while the price has continued to decline as opposed to being able to sell the contractually stipulated amount to Quick Capital at a higher price.

86.     Plaintiff therefore requests that this Court enter judgment for compensatory damages including expectation damages as a result of the breach of contract described herein, in an amount to be determined at trial, as well as such other relief as the Court may deem just and equitable.

### Count VI: Violation of Rule 10b-5 of the Securities Exchange Act

#### (Against INND Defendants)

87.     Plaintiff incorporates all preceding paragraphs by reference.

88.     To prove a violation of the federal antifraud provisions of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, a plaintiff must prove that, in connection with the purchase or sale of a security, (1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages.

89.     Regarding the SPA, INND Defendants misrepresented a material fact with respect to their obligation to provide funding to Hearing Assist.  Both the LOI and the SPA contain an obligation that INND Defendants would provide "Project Funding" in the amount of $4.2M over the ten (10) months following the closing date. Specifically, INND agreed to fund $750,000 to Hearing Assist each month for the first four (4) months following the closing, and $200,000 each month for six (6) months thereafter. Prior to entering into the SPA, this obligation was discussed in an email dated September 17, 2021, in which Defendant Matthew Moore stated that among the opportunities that INND can confer upon Hearing Assist post-merger was INND Defendants' ability to inject $750,000 per month for four (4) months before injecting what he referred to as "phase 2 capital," (the $200,000 per month for six (6) months thereafter). Additionally, Defendant Matthew Moore stated that due to the quick nature of the business deal, INND's funding would be

conditioned upon a binding LOI for Hearing Assist, while allowing INND Defendants to back out for any reason. Further, Defendant Matthew Moore ensured that INND Defendants would be able to inject the first $750,000 installment within five (5) days of signing the binding LOI.

90.     Additionally, both the LOI, the Side Letter Agreement, which is incorporated into the SPA by reference, and the Bridge Loan Agreement contain an obligation that INND Defendants would provide a $1.2 million Bridge Loan in October 2021 upon signing of the LOI. However, this never materialized. Despite the LOI (dated October 12, 2021) being signed and explicitly including INND Defendants' obligation to provide funding, of the $5.4M that was promised, INND Defendants only invested a total of approximately $700,000 to Hearing Assist, contrary to Defendant Matthew Moore's assurances in his email from September 17, 2021.

91.     Defendant Matthew Moore and Defendant INND falsely represented a material fact because Defendant INND did not have cash available to uphold an obligation to provide funding in the amount of $5.4M. In fact, as of September 30, 2021, a mere thirteen (13) days after Defendant Matthew Moore assured Defendant INND's ability to provide funding, Defendant INND had zero cash on its balance sheets while maintaining only $455,236 in receivables. Further, because INND is a non-SEC reporting sub penny company, the sole fundraising tool at its disposal is a "Regulation A Offering." As such, INND had no ability to generate the requisite capital necessary to fulfill its obligation, nor was it in possession of such capital when Defendant Matthew Moore made the commitment to provide funding.

92.     Given that INND had so little cash on its balance sheet, Defendant Matthew Moore's representation that INND Defendants could and would commit funding no less than $4.2M could not have been made in good faith, and is false, or at the very least, was made with a reckless indifference to the truth. Given the December 31, 2021, financial report as well as the June 30, 2022, quarterly financial report which showed cash in the amount of only approximately $110,577, it was clearly impossible for INND Defendants to uphold their financial obligation to provide funding. As Chief Executive Officer of INND, Defendant Matthew Moore surely knew the financial health of his company, and thus was aware that he was making empty financial commitments.

93.     INND Defendants also misrepresented a material fact with respect to the Leak Out Agreement included in the SPA. The Leak Out Agreement was intended to provide for Plaintiff to achieve liquidity six (6) months after entering into the SPA on November 23, 2021. In fact, the Leak Out Agreement explicitly states that after the end of the initial leak-out period (November 23, 2021), Plaintiff would be entitled to convert and sell up to 25% of the total amount of INND shares that Plaintiff receives within each six (6) month period following the initial leak-out period). Prior to the parties entering into the SPA, the terms of the leak out were discussed via email correspondence and included in INND's LOI. Specifically, in the email dated September 17, 2021, (**Exhibit "6"**) Defendant Matthew Moore assured Plaintiff that within each of the six (6) month periods following the initial leak-out period on November 23, 2021, that up to 25% of the total shares could be converted into free trading shares and then liquidated into cash upon his preference.

94.     However, Defendant Matthew Moore's promise that Plaintiff could liquidate within six (6) months of the initial leak-out period is a legal impossibility as INND is not SEC reporting. Pursuant to Rule 144, if the issuer of securities is not SEC reporting and thus not subject to SEC reporting requirements, then securities must be held for a period of at least one year, with the holding period beginning when the securities were purchased and fully paid for. As such, even if Plaintiff was given possession of the first tranche of shares (including the first two "true ups" on time (May 23, 2022, and November 23, 2022, respectively) rather than receiving possession on November 29, 2022, Plaintiff would not have been able to liquidate any of them until November 23, 2022, when the requisite holding period had come to a close. Thus, because Defendant Matthew Moore and INND represented that Plaintiff could liquidate shares as soon as six months following the initial leak-out period, they misrepresented a material fact as their representation was a legal impossibility.

95.     Defendant Matthew Moore knew that this representation was false because he is aware that INND is not an SEC reporting company, especially since Defendant Matthew Moore has operated public companies for a long period of time. As such, the failure to disclose to Plaintiff that his shares were subject to a one year holding period also constitutes deliberate concealment. Further, in the email dated July 12, 2022, Defendant Matthew Moore asserts that INND is not SEC

reporting, and thus the holding period is one year. (See **Exhibit "13."**) In the same email, Defendant Matthew Moore states INND's hope to be SEC reporting by the middle to end of September 2022. INND continues not to be an SEC reporting company.

96.     Instead, INND Defendants have been busy furthering their market manipulation scheme to drive stock price up. In addition to the various defaults on their obligations, INND Defendants have also failed to timely honor share issuance obligations pursuant to the SPA with respect to the shares associated with the third "true up."

97.     INND Defendants persist in refusing to issue shares to which Plaintiff is contractually entitled. This is due to INND Defendants' concern about shareholder reaction from the resulting stock dilution that would occur upon issuing Plaintiff's shares. This is evinced in emails by Defendant Matthew Moore, particularly his email dated June 11, 2022, in which he acknowledges to Plaintiff that the delay in issuing the first "true up" was because he did not want to report those shares and therefore dilute stockholders and potentially decrease the stock value as a result of the disclosure of that share issuance. **Exhibit "4."** Not only is this concealment, but intentionally hiding and failing to disclose a massive number of shares to be issued constitutes market manipulation.

98.     Further, Plaintiff acted in justifiable reliance on the multitude of false representations that INND Defendants made–particularly those made by Defendant Matthew Moore. Defendant Matthew Moore has been operating public companies for a long period of time. Not only does this put defendant Matthew Moore in a superior bargaining position than Plaintiff, but it justifies Plaintiff's reliance on his representation, as a reasonable person in Plaintiff's position would trust someone in Defendant Matthew Moore's position and believe that Defendant Matthew Moore intended to observe his fiduciary duties and act in the best interest of its shareholders.

99.     As a direct and proximate result of INND Defendants taking advantage of their superior bargaining position and making fraudulent representations upon which Plaintiff justifiably relied to his detriment, Plaintiff has suffered substantial damages. Specifically, Plaintiff is facing action by creditors, he is being deprived of his right to possession of shares to which he is contractually entitled, and he has suffered a large economic loss from being unable to liquidate his shares.

100.    Plaintiff therefore requests that this Court enter judgment for compensatory damages including expectation damages in an amount to be determine at trial. Plaintiff further requests that this Court enter judgment awarding Plaintiff punitive damages, costs and attorney's fees, and grant Plaintiff such further other relief as the Court may deem just and equitable.

### Count VII: Specific Performance

### (Against INND Defendants)

101.    Plaintiff repeats and reiterates the prior allegations in the preceding paragraphs as if alleged more fully below:

102.    A plaintiff seeking specific performance must establish that it has no adequate legal remedy, as well as show that (1) a valid contract exists, (2) the plaintiff is ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the party seeking performance.

103.    Plaintiff seeks specific performance of INND Defendants' obligations as set forth in the SPA, specifically with regard to being indemnified by INND Defendants. The harm that Plaintiff has suffered, and will continue to suffer, includes the loss of reputation and goodwill for failing to honor the personal guarantees for which Plaintiff lacks the financial resources to pay, and that INND Defendants are contractually responsible. Such harms are compounded by the imminent damage to Plaintiff's credit score following the issuance of a judgment in the related litigation referenced in ¶ 31, above. No remedy at law can reverse the irreparable damage that Plaintiff has suffered and will continue to suffer as a result of INND Defendants failing to indemnify Plaintiff.

104.    Plaintiff and INND entered into the valid and enforceable SPA and Indemnification Agreements on November 23, 2021.

**105.**    Pursuant to Section 7.12 of the SPA Plaintiff is entitled to specific performance which expressly states that the **"parties agree that irreparable damage would occur if any provision of [the] Agreement [was] not performed in accordance with the terms [thereof] and that the parties shall be entitled to specific performance of the terms [thereof], in addition to any other remedy to which they are entitled at law or in equity." Exhibit "1."**

106.    Plaintiff has fully complied with all of the terms and conditions of the SPA and Indemnification Agreements and has performed all conditions and obligations thereunder, save for

any conditions or obligations from which Plaintiff has been excused. Plaintiff stands ready, willing, and able to continue to perform all conditions and obligations under the SPA and Indemnification Agreements.

107.   This balance of equities easily militates in favor of Plaintiff.

a.   First, INND Defendants specifically bargained for, and assented to, the entitlement of an aggrieved party to specific performance in addition to whatever other remedies it may seek. Second, Plaintiff justifiably relied on the representations of INND Defendants that he would be indemnified against the debts identified in the SPA and Indemnification Agreements, as he would not have the financial means to continue servicing those debts after the closing of the acquisition of Hearing Assist. Third, if INND Defendants are not forced to indemnify Plaintiff, and execute a replacement guaranty with the several creditors of Plaintiff, Plaintiff will be subjected to court judgments and writs of attachment thereon, damage to his professional and personal reputation and goodwill, damage to his credit score maintained by the three major credit reporting agencies, and other harms which appear imminent unless specific performance is ordered here.

b.   Alternatively, INND Defendants are "holding all the cards," and have the means to perform its obligations under the SPA and Indemnification Agreements. The harm INND Defendants would suffer—if any— by requiring specific performance is lesser than the harm Plaintiff would suffer if specific performance is not required, because INND Defendants intentionally negotiated the specific performance provision in the acquisition agreements, understood that their failure to perform would constitute irreparable harm to Plaintiff, and agreed that Plaintiff would be entitled to specific performance if INND Defendants failed to perform *any* of its obligations.

108.   Not only is Plaintiff contractually entitled to specific performance in this case, but as a result of the foregoing, Plaintiff has satisfied the requirements set forth in *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) which entitles him to specific performance.

Accordingly, Plaintiff requests that this Court grant specific performance of INND Defendants' indemnification obligations as fully set forth in the valid and enforceable SPA and Indemnification Agreements.

**Count VIII: Temporary Restraining Order and Permanent Injunction**

**Fed. R. Civ. P. 65 & Va. Code §§ 8.01-620 & 8.01-622**

**(Against INND Defendants)**

109.     Plaintiff repeats and reiterates the prior allegations in the preceding paragraphs as if fully alleged below:

110.     Federal Rule of Civil Procedure 65 addresses the authority of a district court to issue "injunctions and restraining orders," and Rule 65(b) states that a district court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" where: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

111.     Plaintiff can establish that he has already suffered an irreparable injury because pursuant to Section 7.12 of the SPA, the parties agreed that irreparable damage would occur if any provision of the SPA was not performed in accordance with its terms. Given that INND Defendants numerously breached their obligations under the SPA, irreparable damage has been suffered by Plaintiff.

112.     Virginia law permits a court to award an injunction "whether the party against whose proceedings the injunction be asked resides in or out of" the jurisdiction in which the injunction is sought, Va. Code § 8.01-620, and additionally "to protect any plaintiff in a suit for specific property, pending either at law or in equity, against injury from the sale, removal, or concealment of such property." Va. Code § 8.01-622.

113.     To seek a permanent injunction, Plaintiff must allege that (1) that the plaintiff has suffered an irreparable injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury, (3) that the remedy in equity is warranted upon consideration of the

28

balance of hardships between the plaintiff and defendant, and (4) that the permanent injunction being sought would not hurt public interest.

114.    Plaintiff can establish that he has suffered an irreparable injury because pursuant to Section 7.12 of the SPA, the parties agreed that irreparable damage would occur if any provision of the SPA was not performed in accordance with its terms. Given that INND Defendants numerously breached their obligations under the SPA, irreparable damage has been suffered by Plaintiff.

115.    Remedies available at law, such as monetary damages, are inadequate to compensate for the injury because INND Defendants have no capital but rather rely on Plaintiff to subsidize their company by requiring him to pay the rent on its Virginia Beach facilities. As previously stated, INND only has negligible cash reserves against approximately $10M in liabilities.  There is simply no capital available to pay off Plaintiff. Moreover, due to the lengthy nature of litigation, by the time this matter reaches conclusion it is likely that INND will not be in operation. Consequently, the only remedy of value to Plaintiff is permanent injunctive relief. Specifically, the only remedy of value is an injunction on INND's ability to issue shares. This way, in the event that INND raises enough capital through its Regulation A offerings, Plaintiff will be in a position to negotiate (1) that his shares can be released for sale and (2) that some portion of that capital raised can be used to pay off amounts owed to him.

116.    In the absence of granting such injunctive relief, INND Defendants will continue with their flagrant violations of the SPA. Granting the injunction is not harmful to public interest. By contrast, it will provide the public with an accurate representation of the valuation of INND's stock as opposed to the inflated value propped by the false number of outstanding shares in INND's possession. Furthermore, granting the injunction is the only way in which Plaintiff can cease suffering irreparable harm and that the interests of justice can be served.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:

117.    Enter judgment on all counts herein in favor of Plaintiff and against all Defendants, and each of them;

118.    Award of compensatory damages in an amount to be determined at trial (Counts I and IV);

119.    A judicial declaration that INND Defendants are obligated to perform each duty described in ¶44(a)-(g), above (Count II);

120.    A Judicial declaration that INND Defendants are obligated to timely issue the fourth "true up" in full on November 28, 2023 (Count II);

121.    A judicial declaration that VStock is obligated to transfer the 30,000,000 shares of INND as request by Mr. Kuriloff (Count III);

122.    Award Plaintiff all reasonable attorneys' fees and costs in an amount to be determined at trial;

123.    Award Plaintiff pre-judgment and post-judgment interest;

124.    Award Plaintiff the costs of these proceedings;

125.    Enter judgment enforcing specific performance with respect to all obligations of INND Defendants under the SPA (including but not limited to removing plaintiff as a guarantor and indemnifying debts associated with the guarantee), the Indemnification Agreement, and the Leak Out Agreement;

126.    Issue a temporary restraining order against INND Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and as well as all persons and entities in active concert or participation with them, as follows:

      a.  Enjoining INND Defendants from issuing any shares until such time as they issue all "true up" shares currently due and owing to Plaintiff Kuriloff, including the tranche scheduled for May 23, 2023;

      b.  Enjoining INND Defendants from issuing any shares until such time as they issue all "true up" shares due and owing to Plaintiff Kuriloff in the tranche scheduled for November 23, 2023;

      c.  Enjoining INND Defendants from preventing VStock's transfer of Plaintiff Kuriloff's shares;

      d.  Enjoining Defendants Matthew Moore, Mark Moore, and Kimberly Moore from selling or otherwise transferring any INND stock until an adjudication on the merits;

127.    Enter permanent injunctive relief against INND Defendants and their officers, directors, principals, agents, servants, employees, successors, and assigns, and as well as all persons and entities in active concert or participation with them, as follows:

   a.   Enjoining Defendants Matthew Moore, Mark Moore, and Kimberly Moore from selling or otherwise transferring any INND stock until Plaintiff Kuriloff has received all INND shares to which he is entitled;

   b.   Enjoining Defendants Matthew Moore, Mark Moore, and Kimberly Moore from selling or otherwise transferring any INND stock until Plaintiff Kuriloff has been indemnified against all debts and obligations identified in the SPA, LOI, and/or Indemnification Agreements;

   c.   Enjoining Defendants Matthew Moore, Mark Moore, and Kimberly Moore from selling or otherwise transferring any INND stock until INND Defendants have executed a replacement guarantee for the personal guaranty that is the subject of the litigation identified in **Exhibit "12"** (*Canon Financial Services, Inc. v. Hearing Assist II, LLC; Floyd Kuriloff; and Hearing Assist II, Inc*, New Jersey Superior Court case number L-1960-21);

   d.   Requiring that any shares that have been issued or otherwise transferred to Defendants Matthew Moore, Mark Moore, and Kimberly Moore in violation of any law, regulation, or contractual provision be invalidated and reversed.

128.    Grant Plaintiff any and all other relief that the Court deems just and proper.

Dated: June 15, 2023                              Respectfully Submitted,

                                                  FLOYD KURILOFF

                                                  */s/ Richard H. Ottinger*_____
                                                  Richard H. Ottinger, Esq. (VSB No. 38842)
                                                  WOODS ROGERS VANDEVENTER
                                                  BLACK PLC
                                                  101 W. Main Street, 500 World Trade Center
                                                  Norfolk, VA 23510
                                                  T: 757.446.8600
                                                  F: 757.446.8670
                                                  Richard.Ottinger@wrvblaw.com

Uri Litvak, Esq. (*pro hac vice* pending)
LITVAK LAW GROUP
2424 S.E. Bristol St., Suite 300
Newport Beach, CA 92660
T: 949.437.4058
F: 949.335.7113
Ulitvak@litvaklawgroup.com

*Counsel for Floyd Kuriloff*